## IN THE MATTER OF THE APPLICATION OF VICTORIA WARD TO REGISTER AND CONFIRM TITLE TO CERTAIN LAND SITUATE AT KEWALO, HONOLULU, OAHU, TERRITORY OF HAWAII.

No. 1989.

Argued February 24, 1931.     Decided February 27, 1931.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PERRY, C. J.

Under the title of the above entitled court and cause the City and County of Honolulu presented to the land court of this Territory a petition to the effect that Victoria Ward and her three daughters, Hattie Kulamanu Ward, Lucy Kaiaka Ward and Victoria Kathleen Ward, be required to appear and show cause, if any they had, why they should not surrender Land Court Transfer Certificate No. 7250 for cancellation and further asking for the issuance of a new certificate of title to the petitioner for lots "F" and "G," being portions of the land described in certificate No. 7250. The four respondents above named answered. Demurrers to the answer were overruled and subsequently upon the admissions contained in the answer and upon other admissions made orally at the hearing, the land court granted the prayer of the petition and entered a decree in conformity therewith. Thereupon the respondents other than Victoria Ward sued out a writ of error to review that decree.

On March 19, 1928, the City and County of Honolulu instituted a statutory action for the condemnation of lots "F" and "G," above referred to, for road purposes. Thereafter, and before answer was filed, the respondent Victoria Ward executed and delivered a deed conveying to her three daughters above named a certain tract of land including lots "F" and "G." The conveyance was to the three "as joint tenants with me, the heirs of the survivor of them, and unto their assigns, forever," with the reservation to the grantor of "the right to jointly use and occupy the said piece of land during my life together with the said" three. It was expressly admitted in the land court in the proceeding now under review that at the time of

the receipt of said conveyance the three grantees "had full, complete and actual notice of the pendency of the condemnation suit against Victoria Ward as sole owner of" the two lots. After the date of this deed an answer was filed by Victoria Ward in the action for condemnation in which it was averred *inter alia* that she was the owner of the land sought to be condemned. It further appears from the record that two at least of the three daughters attended frequently at the trial, which continued for about ten days, and were perfectly familiar with the details of the proceeding.

Section 819, R. L. 1925, which is a part of chapter 61 relating to eminent domain, provides that: "Any person in occupation of or having any claim or interest in any property sought to be condemned or in the damages for the taking thereof though not named in the complaint, may appear, plead, and defend in respect to his own property or interest, in like manner as if named in the complaint." No appearance was entered in the condemnation suit by any of the three daughters and no attempt was made by them to defend in their own names. A verdict having been rendered and a judgment entered assessing the damages payable to Victoria Ward as owner of the land, the City and County of Honolulu thereafter paid the amount required by the judgment to the clerk of the circuit court in which the judgment had been entered and later still the money was paid by the clerk to the attorney for Victoria Ward. No claim was presented by any of the three daughters to the clerk or to the court for the compensation awarded by the verdict and no effort was made in that action for the establishment of the right on their part as owners of the land to the compensation or to any part thereof.

The three daughters purchased during the pendency of the action for condemnation. It is well established in this

jurisdiction that a purchaser *pendente lite* is bound by the result of the suit. *Watson* v. *Watson,* 9 Haw. 389, 391; *Spreckels* v. *Macfarlane,* 9 Haw. 412; *Bertelmann* v. *Lucas, ante* pp. 71, 73, 74. *United States* v. *Merriam,* 161 Fed. 303, is not an authority to the contrary. The question now under consideration was not discussed or decided in that case. Moreover, the three daughters, as shown by their admission in open court, had at the time of receiving the deed actual knowledge of the existence of the action for condemnation. They are bound by the judgment rendered in the proceeding against their grantor.

Section 823, R. L. 1925, reads as follows: "The plaintiff must within two years after final judgment pay the amount assessed as compensation or damages; and upon failure so to do all rights which may have been obtained by such judgment shall be lost to the plaintiff; and if such payment shall be delayed more than thirty days after final judgment, then interest shall be added at the rate of seven per cent. per annum. Such payment shall be made to the clerk of the court rendering the judgment, who shall distribute the same in accordance with the order of the court." Section 824 reads: "When all payments required by the final judgment have been made, the court shall make a final order of condemnation, which must describe the property condemned and the purposes of such condemnation, a certified copy of which must be filed and recorded in the office of the registrar of conveyances; and thereupon the property described shall vest in the plaintiff."

The City and County of Honolulu made the payment of the amount of the judgment to the clerk of the court as was required by the statute, and made that payment within the two years named in the same section. Thereafter, pursuant to the statute, the final order of condemnation was made by the court and recorded in the office of the

registrar of conveyances. Thereupon the title to the property described in the final order became vested in the City and County of Honolulu. Section 3269, R. L. 1925, which is a part of chapter 186 relating to the court of land registration, provides: "No writ of entry * * * and no judgment or decree * * * shall have any effect upon registered land as against persons other than the parties thereto unless a full memorandum thereof, containing also a reference to the number of the certificate of title of the land affected, and the volume and page of the registration book where it is entered, shall be filed and registered." In effect this provision is entirely consistent with that of section 824 above quoted. Title vested upon recording of the final order of condemnation.

There has been no taking without due process of law or without just compensation. The person, Victoria Ward, who was the sole owner of the land at the time the action was instituted, was duly summoned, was given notice and an opportunity to be heard and made vigorous contest at the trial. The hearing and the determination was by a jury, the tribunal authorized by law to hear and determine cases of that nature. The three daughters had ample notice, both constructive and actual, of the institution of the suit, even before the filing of any answer. The statute expressly gave them an opportunity to appear in the action and to present their claims. Of this opportunity they did not care to avail themselves. Compensation was awarded and paid to the owner of the land,—compensation admeasured by the jury after a complete and adequate trial. That the compensation was paid wholly to the mother and not partly to the daughters must be deemed to be due entirely to the failure of the daughters to appear and to present their claims when they had the opportunity to do so. As to the daughters, and the mother as well, the constitutional provisions invoked have not been violated.

The jurisdiction of the land court to hear and to pass upon such a petition as was filed in this case for the surrender of an old certificate in order to procure the issuance of a new one, in the case of a transfer of the title of a whole or a part of the land described in the original certificate, is attacked by the appellants. We are of the opinion that the procedure followed was in conformity with and was authorized by the statute relating to registration of land in the land court. It is true that while under section 3268 in chapter 186 new certificates are specifically authorized in cases of sales on execution or for the enforcement of liens, there is in the statute no specific provision relating to the issuance of a new certificate upon the acquisition by the Territory or any subdivision thereof, by condemnation, of land for public purposes. It is obvious, however, from the statute as a whole, and particularly from section 3237, that the certificates of title issued by the land court are intended to represent the truth and that when they cease to represent the truth they are intended to be cancelled or modified so as to conform to the new facts. Section 3237 provides that "the original certificate in the registration book, any copy thereof duly certified under the signature of the registrar * * * and also the owner's duplicate certificate, shall be received as evidence in all the courts of the Territory, and shall be conclusive as to all matters contained therein, except so far as otherwise provided in this chapter." Section 3226 provides that: "The land court shall have power to make and award all such judgments, decrees, orders and mandates; to issue all such executions, writs of possession and other processes, and to take all other steps necessary for the promotion of justice in matters pending before it, and to carry into full effect all powers which are, or may be given to it by law." In cases of voluntary transfers of land provision is made for the surrender of old certificates and

the issuance of new ones to conform to the facts. In case of a transfer of a part or parts only of registered land, described in a given certificate, the provision is that the old certificate shall be surrendered and a new one issued to the grantee for the part or parts that are sold and a new certificate to the grantor for the part that is not sold. It was undoubtedly the intention of the legislature that when a part of registered land has been judicially condemned and fully paid for, any certificate theretofore issued by the land court shall be cancelled or corrected so as to show the taking by the government and the transfer of the title. To hold otherwise would be to say that it was the intention of the legislature to permit certificates of the land court to continue in existence after they, through changes in the facts, become misleading and instruments of error or fraud. This we cannot do.

The decree of the land court is affirmed.

*C. B. Dwight* (also on the briefs) for plaintiff in error.

*L. P. Scott,* Deputy City and County Attorney (also on the brief), for defendant in error.