# RE TAXES VICTORIA WARD.

## No. 2165.

ARGUED NOVEMBER 7, 1934.          DECIDED NOVEMBER 19, 1934.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY COKE, C. J.

This is a property tax appeal involving a controversy between the tax assessor, first taxation division, appellant, and Victoria Ward, appellee. Mrs. Ward is the owner of real estate consisting of what is known as the Old Plantation premises on King Street, and also four additional tracts in the same vicinity described as lots B, C, D and E, all located in the City and County of Honolulu and title to which has been registered in her name by decree of the land court of the Territory. The controversies over the property values were carried up to the tax appeal court by appeals of the owner from decisions of the board of review and a separate appeal was prosecuted by the Territory, the purpose of the latter being to secure

authorization of the tax appeal court to add to the assessment list a small area which through oversight had been omitted by the assessor from lot B. By stipulation of parties the several appeals were consolidated and heard by the court below as a single proceeding which was disposed of in one opinion. We will treat the subject in like manner.

The only property value involved in the present appeal has reference to lot B, containing an area of 4.266 acres and lying on the north side of and adjacent to Ward Avenue and between King Street and Kapiolani Boulevard. The tax assessor and the board of review fixed the value of this lot at $51,022. The tax appeal court reduced this figure to $17,420. In determining the value of lot B the tax appeal court took into consideration as one of the factors detracting from its value the liability of the owner of the lot to the traveling public for damages which might be sustained by those using Ward Avenue where such damages result from the unsafe or dangerous condition of the avenue, the court saying in its opinion: "The holding of title to property carries with it liabilities as well as benefits and in the instant case the holding of technical title to Ward Street by the taxpayer, even though the same was being used by the public as a public highway and perhaps an easement therefor had been acquired by the public, created the legal responsibility of upkeep, maintenance, and protection of the public against acts of negligence, whether of commission or omission." This is an erroneous statement of the law of the case. There appears to be some controversy between the taxpayer and the government in reference to their respective rights in the area comprising Ward Avenue but it is conceded by all that the municipal government is at present and for more than twenty-five years has been in possession and control of the area and during the entire period has main-

tained it as a public highway. See *Ward* v. *City and County*, 31 Haw. 787. In view of this fact the city and and county would be solely liable for any damages sustained through failure to maintain the highway in a safe and proper condition. Neither the owner of the fee of this nor any adjacent property could under such circumstances be required to respond in damages because of the unsafe or dangerous condition of the highway area so long as the same was in the possession and control of the city and county. It is the control and not the ownership which determines liability. 7 McQuillin Mun. Corp. (2d ed.) § 2922; *Poole* v. *So. Ry. Co.*, 129 S. E. 297; 43 C. J. § 1765. That the city and county is liable in damages for nonfeasance in failing to maintain a public highway in a reasonably safe condition so as to guard against injury to one lawfully traveling on the highway is settled in this jurisdiction. See *Reinhardt* v. *County of Maui*, 23 Haw. 102.

It is not at all clear from the record just what portion of the reduction in the value of lot B made by the tax appeal court can be attributed to the erroneous application of the doctrine of liability but it is apparent from the decision appealed from that this factor was the basis of at least a substantial part of the reduction granted the taxpayer by the court below.

In the decision of the court below we find reference to the dismissal of the appeal of the assessor. Aside from this and a discursive mention of the subject in the opening brief in behalf of the assessor, the record sheds no light upon this phase of the controversy. The record contains no copy of the notice of appeal of the assessor nor does the certificate of appeal make reference to it. From the meager facts before us it would appear that the assessor's appeal is without merit. The power to make corrections in assessment lists by adding thereto omitted property is re-

posed in the tax commissioner under the provisions of section 33, Act 40, 2d Sp. S. L. 1932. It is a ministerial act authorized by statute requiring no judicial sanction or approval.

For the reasons herein stated the decision appealed from is reversed and the cause is remanded to the court below with instructions to ascertain the value of lot B in conformity with the principles announced in this opinion.

*G. P. Kimball,* Third Deputy Attorney General (*W. B. Pittman,* Attorney General, with him on the briefs), for the tax assessor.

*C. A. Long* (also on the brief) for the taxpayer.